OPINION
{¶ 1} Appellant Darrell W. Swaney appeals a divorce judgment of the Tuscarawas County Common Pleas Court, terminating his marriage with appellee Connie L. Swaney, and dividing marital property:
 {¶ 2} "THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE OPINION OF THE APPELLANT'S REAL ESTATE APPRAISER REGARDING THE VALUE OF THE MARITAL HOME LOCATED AT 200 GREENWOOD AVENUE, NEWCOMERSTOWN, OHIO.
 {¶ 3} "THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING THE APPELLEE SPOUSAL SUPPORT IN THE AMOUNT OF $1,200.00 FOR 72 MONTHS."
 {¶ 4} "THE TRIAL COURT ABUSED ITS DISCRETION BY OFFSETTING THE EQUITY IN THE MARITAL HOME AGAINST THE VALUE OF APPELLANT'S PENSION.
 {¶ 5} THE TRIAL COURT'S FAILURE TO RECOGNIZE APPELLANT'S SEPARATE PROPERTY INTEREST IN THE PUTNAM HARTFORD IRA IS AGAINST THE MANFIEST WEIGHT OF THE EVIDENCE."
 {¶ 6} The parties were married in 1977, and had one child, who is emancipated. Appellant had been employed at Baker's IGA for twenty-eight years, earning approximately $66,000, plus bonuses. Appellant takes several heart medications following open heart surgery, and Viagra. The parties had sexual relations only a few times in the last eighteen months of the marriage, and appellee was not aware that appellant had a prescription for Viagra until after they separated. She became angry when a Viagra refill was delivered to the marital residence after their separation.
 {¶ 7} Appellee is a licensed beautician and also works for the Newcomerstown Schools as a library aide. During the calendar year 2000, appellee earned approximately $11,000. She had tendonitis in both arms, and has been seeing a counselor regularly since appellant left the marital residence.
 {¶ 8} Appellant filed the instant action for divorce. He claimed that he has been unhappy in the marriage for many years, but did not discuss his unhappiness with appellee because he did not like confrontation. He testified at trial that he would fall asleep on the couch while watching TV, and appellee would not wake him to come to bed, which he believed was an example of gross neglect of duty and extreme cruelty. At the time of trial, appellant was living with Janet Burke, who he began a sexual relationship with almost immediately after vacating the marital residence.
 {¶ 9} The court granted the parties a divorce, and divided marital property, including an IRA account appellant had at Putnam Hartford. The IRA had a balance of $94,052. Appellant unsuccessfully argued that a portion of the account was pre-marital and therefore separate property, as contributions to the account began in 1973, four years before the parties were married. The court ordered appellant to pay spousal support in the amount of $1200 per month for 72 months.
 I {¶ 10} In his first assignment of error, appellant argues the court erred in failing to consider the opinion of his real estate appraiser. Appellant essentially argues that the court erred in valuing the opinion of appellee's appraiser, Don Wallick, more highly than that of appellant's appraiser, Lauri Fantin.
 {¶ 11} Where the decision in a case turns upon credibility of testimony, and when there exists competent and credible evidence supporting the findings and the conclusions of the trial court, the reviewing court must give deference to such findings and conclusions.Myers v. Garson (1993), 66 Ohio St.3d 610, 614. The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses, observe their demeanor, and use these observations in weighing the credibility of the testimony. Id. at 615.
 {¶ 12} In the findings of facts of the magistrate, adopted by the trial court, the magistrate found that appellee's appraiser was more accurate and reliable, as he is a disinterested third party, had seen the interior of the home, and his comparables were in the same school district. This finding is supported by the record. The record reflects that appellant's appraiser is his niece. She testified that she based her appraisal concerning the interior of the house on the information that was given to her by appellant, and not on observation. She also based her comparables on homes in other school districts. The court did not abuse its discretion in finding that appellee's appraiser provided a more accurate appraisal than appellant's appraiser.
 {¶ 13} The first assignment of error is overruled.
 II {¶ 14} Appellant argues that the court erred in ordering him to pay appellee spousal support in the amount of $1200 per month for a period of 72 months. Appellant argues that the trial court failed to consider his prescription expenses and medical problems, and an inheritance received by appellee.
 {¶ 15} In Finding of Fact 28, the court reviews the spousal support factors found in R.C. 3105.18, applying them to the facts of the case. The court found that appellant had a significantly higher income than appellee, and appellee had the ability to earn more money than appellant. The marriage lasted 24 years. The court found that the parties established a comfortable standard of living during the marriage. The court did specifically find that appellee had separate property, from an inheritance.
 {¶ 16} Based on the evidence concerning disparate income and earning power, the length of the marriage, and other specific factors considered by the court, we cannot find that the court abused its discretion in the award of spousal support.
 {¶ 17} The second assignment of error is overruled.
 III {¶ 18} In his third assignment of error, appellant first argues that the court erred in failing to treat a portion of the IRA as separate property, and in offsetting the value of the marital residence equity against the IRA, due to the disparate tax consequences upon liquidation of each.
 {¶ 19} Pursuant to R.C. 3105.171 (A)(6)(a)(ii), separate property includes any real or personal property or interest in property that was acquired by one spouse prior to the date of the marriage. The commingling of separate property with other property of any type does not destroy its identity as separate, except when the separate property is not traceable. R.C. 3105.171(A)(6)(b). The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Hildebrand v.Hildebrand, Morrow Appellate No. 954, 2003-Ohio-3654.
 {¶ 20} Appellant testified that he began working at Baker's grocery store on October 15, 1973. Tr. 53. He began purchasing CD's at a bank to save for retirement, in $200 increments. He testified that at some point in time, he had in excess of 30 CD's. Id. He stopped purchasing CD's in January of 1983. Tr. 54. At some point the employer began contributing to the purchases, but when the employer stopped contributing in 1983, appellant also stopped contributing. Tr. 55. He had no information on any of the CD's as far as what he bought, or when he bought them. Tr. 56. He could not clarify how long before the marriage his employer contributed to the purchase of CD's for retirement. Id. In 1994, the money was rolled over into the Putnam Hartford account, worth over $94,000 at the time of trial.
 {¶ 21} Appellant later testified that at the time he rolled the CD's over into the IRA account, he had CD's in $100 and $200 increments. They accumulated between $18,000 and $20,000 at the time they were rolled into the IRA. Tr. 74. He testified that about a year to eighteen months after he started purchasing CD's, the employer started the same program for the total company, and began contributing along with him. Tr. 74-75.
 {¶ 22} Still later in the hearing, appellant testified that he contributed 41 months prior to the marriage, and 70½ months after the marriage. Tr. (II) 57. He therefore claimed that the marital portion was 63%.
 {¶ 23} Appellant has not met his burden of tracing what portion of the Putnam Hartford account was separate property. He could place no value on the amount of his contribution and the amount of his employer's contribution prior to the 1977 marriage. Appellant testified generally concerning the amounts of the CD's he purchased, but could not place a value on the amount he contributed to the plan prior to the marriage in 1977. Nor could he place a value on the amount the employer contributed to the plan prior to the marriage in 1977, or an exact date as to when the employer began to contribute to the plan. Appellant cannot claim a percentage of the plan is separate based solely on the number of months he contributed prior to the marriage, when there is no evidence to support a claim that contributions were equal both before and after the marriage, as to both himself and the employer. The court did not err in finding the entire IRA account was marital property.
 {¶ 24} As to appellant's claim that the court erred in offsetting the IRA account against the equity in the residence, appellant presented no evidence, expert or otherwise, on the issue of tax consequences or liquidity of assets. The court therefore did not abuse its discretion in offsetting one against the other.
 {¶ 25} The third assignment of error is overruled.
 IV {¶ 26} In his fourth assignment of error, appellant maintains the court erred in finding that the entire IRA account was marital property. For the reasons stated in III, above, appellant failed to establish by a preponderance of the evidence the traceability of his separate property in the IRA account.
 {¶ 27} The fourth assignment of error is overruled.
 {¶ 28} The judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs to appellant.
Hoffman, and Edwards, JJ., concur.